<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARRO-MARK CO. LLC., <br><br>*Plaintiff,*<br><br>v.<br><br>CEDRIC WARREN (individually), MICHAEL MAMARY (individually), SKM INDUSTRIES, INC., SHANTA SYAL (individually), AND JOHN DOE 1-10 AND ABC CORPORATIONS 1-10 (being fictitious names of persons and entities who are not presently known to Plaintiff),<br><br>*Defendants.* | Case No.: 2:22-cv-6663-JKS-MAH<br><br>**WHEREAS OPINION AND ORDER**<br><br>March 28, 2024 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon the filing of Plaintiff Arro-Mark Co. LLC's Renewed Order to Show Cause (ECF 145), which seeks (1) to hold Defendants SKM Industries Inc. ("SKM") and Shanta Syal ("Syal") (together, "Defendants") in contempt of court for violating this Court's December 20, 2022 Consent Order (ECF 26) and (2) to enjoin Defendants from infringing upon Plaintiff's trademarks. The Court considered Plaintiff's and Defendants' submissions[1] and held oral argument on March 27, 2024; and

**WHEREAS** Plaintiff is a closely held business engaged in manufacturing and producing inks and paints for permanent marking devices for sale in interstate commerce. (Pl. Br. at 3.) SKM

---

[1] Plaintiff's memorandum of law in support of its application (ECF 145-1) is referred to as "Pl. Br." Defendants' Opposition to Plaintiff's application (ECF 148) is referred to as "Opp." Plaintiff's Reply (ECF 151) is referred to as "Reply."

does business in the same industry. (Opp. at 32-33.) "[T]he parties' have had a long-standing relationship, and [Defendant] SKM has used the subject trademarks on Arro-Mark products for several years[.]" (Opp. at 24.) The relationship deteriorated, and Plaintiff filed suit alleging, among other things, trademark infringement and misappropriation of trade secrets. (ECF 1, 123.)

**WHEREAS** Plaintiff seeks to hold Defendants in contempt of court for violating this Court's December 20, 2022 Consent Order. To establish civil contempt, the movant must show by clear and convincing evidence that (1) a valid court order existed; (2) defendants had knowledge of the order; and (3) defendants disobeyed the order. *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995); *Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir. 1990). The Consent Order states, as relevant here,

> 1. Defendants Warren, Mamary, SKM and Shanta shall not market, produce, distribute, sell or advertise products using or bearing the term "Muscle Man" in written form, word or image and they shall make reasonable efforts to take down current advertising related thereto . . .
>
> 5. Defendants Warren, Mamary, SKM and Shanta shall not market, produce, distribute and/or otherwise sell any of Plaintiff's trade secrets;

(ECF 26 ¶¶ 1, 5.) Plaintiff asserts Defendants violated Paragraph 1 of the Consent Order by marketing products bearing the term "Muscle Man." (Pl. Br. at 10-13.) Plaintiff asserts Defendants violated Paragraph 5 by creating a nib catalog that copied Plaintiff's nib catalog, using Plaintiff's distributor price list to undercut Plaintiff's pricing in the marketplace, and misappropriating Plaintiff's customer list to market Defendants' products to Plaintiff's customers. (*Id.* at 13-15.)

**WHEREAS** a defendant should not be found in contempt of an order if there is reason to doubt the wrongfulness of defendant's conduct. *Harris*, 47 F.3d at 1326 (citing *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982)). The resolution of any ambiguities should favor the party charged with contempt. *Harris*, 47 F.3d at 1326. Defendants assert they did not

2

violate Paragraph 1 of the Consent Order because they "have not produced, distributed, sold, or advertised 'Muscle Man' product since entry of the Consent Order, and indeed removed all current advertising related thereto." (Opp. at 8-9.) Further, Defendants assert Plaintiff relies on alleged instances of marketing or advertising that occurred prior to the entry of the Consent Order, highlighting the dates contained in the URLs. (*Id.* at 9-11.) Given the ambiguities surrounding the Defendants' conduct, *see Harris*, 47 F.3d at 1326, the Court finds Defendants did not violate Paragraph 1 of the Consent Order.

**WHEREAS** Defendants assert they did not violate Paragraph 5 of the Consent Order and argue Plaintiff's allegations are based entirely upon speculation and inference. (Opp. at 13-14.) For example, in its brief, Plaintiff states "SKM Defendants are *believed* to possess Arro-Mark's distributor price list" and "it can reasonably be inferred that SKM and Syal have misappropriated Arro-Mark's customer list . . . ." (Pl. Br. at 13-14 (emphasis added).) Defendants argue, in the alternative, that even if these allegations were true, such conduct would have taken place prior to the entry of the Consent Order and could not form the basis for a finding of contempt. (*Id.* at 14.) Because there is sufficient reason to doubt the wrongfulness of Defendants' conduct, *see Harris*, 47 F.3d at 1326, the Court agrees with Defendants and finds Defendants did not violate Paragraph 5 of the Consent Order. Accordingly, the Court declines to find Defendants in contempt or issue sanctions against Defendants.[2]

**WHEREAS** Plaintiff seeks to "enjoin[] Defendants from marketing, producing, distributing, and/or otherwise profiting from the misappropriation of Plaintiff's trademarks." (Pl.

---

[2] Although this case was filed in November of 2022, the parties have engaged in limited discovery thus far. Plaintiff asked this Court "to order the Defendants SKM and Shanta turn over all electronic devices to Plaintiff's forensic expert who will make a copy of the hard drive for purposes of learning what other emails have been exchanged concerning misappropriation of Plaintiff's proprietary information." (Pl. Br. at 17.) Plaintiff's briefs did not cite to any legal authority to support its request for this extreme measure. Accordingly, the Court denies Plaintiff's request.

3

Br. at 18.) Preliminary injunctive relief "is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). To obtain a preliminary injunction, "[t]he moving party must demonstrate, first, a likelihood of success on the merits, and second, that 'it is more likely than not to suffer irreparable harm in the absence of preliminary relief.'" *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (footnote omitted)). If both factors are established, a court will consider two remaining factors: whether granting relief will result in even greater harm to the nonmoving party or other interested persons and whether the public interest favors such relief. *Mallet & Co.*, 16 F.4th at 380. "[T]he failure to establish any element renders a preliminary injunction inappropriate." *Ferring Pharms., Inc.*, 765 F.3d at 210 (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (internal punctuation omitted)).

**WHEREAS** to receive a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits of its trademark infringement and false association claims. *Mallet & Co.*, 16 F.4th at 380. To establish a claim for federal trademark infringement, a plaintiff must show that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) defendant's use of the mark causes a likelihood of confusion. *E.A. Sween Co. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). The elements of a false association claim mirror the elements of a trademark infringement claim. *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017) (explaining that to establish false association, a plaintiff must prove: (1) the trademark is valid and legally protectable; (2) plaintiff owns the trademark; and (3) defendant's use of the trademark to

identify goods or services is likely to create confusion concerning the origin of the goods or services). Plaintiff asserts that it is the registered owner of the "Bleed-Thru" and "Mighty Marker" word marks. (Pl. Br. at 1.) Plaintiff also asserts that it has common-law trademarks over these marks. (*Id.*) Plaintiff argues "the infringement of Arro-Mark's marks could lead a consumer to believe that Arro-Mark and SKM are associated. The marks 'Mighty Marker' and 'Bleed-Thru' are associated with Arro-Mark. Therefore, the use of these marks in a manner identical to Arro-Mark is likely to lead to confusion amongst consumers." (*Id.* at 25.) In their Opposition, Defendants argue Plaintiff fails to establish a likelihood of success on the merits because Defendants are not engaging in trademark infringement. (Opp. at 23-30.) Defendants assert that any sales of Plaintiff's products are protected by the first sale doctrine, and some of the trademarks at issue are merely descriptive. (*Id.*) The first sale doctrine is an affirmative defense to trademark infringement claims. *Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, 652 F. Supp. 3d 481, 493 (D.N.J. 2023). This doctrine provides that "a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998). The parties have a long history of doing business with one another, with Plaintiff selling its products to Defendant SKM for resale, allegedly as recently as December 23, 2022. (Opp. at 29.) Considering these facts, for purposes of seeking injunctive relief, Plaintiff has not demonstrated a likelihood of success on the merits.

**WHEREAS** even if Plaintiff established a likelihood of success on the merits, Plaintiff has not established irreparable harm. "[T]o show irreparable harm[,] a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.

Economic loss does not constitute irreparable harm." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). Indeed,

> [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Plaintiff has stated that Defendant SKM's use of its marks "is likely to lead to confusion amongst consumers" and affect Plaintiff's goodwill in the market. (*Id.* at 25.) Defendants assert that Plaintiff's "theory of harm is based on [] supposition and conjecture." (Opp. at 30-31.) They argue that Plaintiff cannot establish irreparable injury because it fails to show any customer confusion or lost sales stemming from Defendants' alleged infringement. (*Id.*) Plaintiff has failed to show irreparable harm, and Plaintiff's request for a preliminary injunction is denied.

For the foregoing reasons, and for good cause shown,

**IT IS, on this 28th day of March 2024**,

**ORDERED** that Plaintiff's request to hold Defendants in civil contempt is **DENIED** and Plaintiff's request for a preliminary injunction is **DENIED**.

> */s/ Jamel K. Semper*
> **HON. JAMEL K. SEMPER**
> **United States District Judge**

Orig:  Clerk
cc:    Parties
       Michael A. Hammer, U.S.M.J.