**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARRO-MARK CO. LLC.,<br>*Plaintiff,*<br>v.<br>CEDRIC WARREN (individually), MICHAEL MAMARY (individually), SKM INDUSTRIES, INC., SHANTA SYAL (individually), AND JOHN DOE 1-10 AND ABC CORPORATIONS 1-10 (being fictitious names of persons and entities who are not presently known to Plaintiff),<br>*Defendants.* | Case No.: 22-6663<br>**OPINION AND ORDER**<br>October 13, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon Plaintiff Arro-Mark Co. LLC's ("Arro-Mark" or "Plaintiff") combined Motion for a Preliminary Injunction, Motion for a Contempt Order, and Motion for Sanctions, (ECF 281, "Motion" or "Mot."), which, in essence, seeks (1) to enjoin Defendants SKM Industries Inc. ("SKM") and Shanta Syal ("Syal") (together, "Defendants") from infringing upon Plaintiff's trademarks, and (2) to hold Defendants in civil contempt of, and impose sanctions for violating, this Court's December 20, 2022 Consent Order. (ECF 26, "Consent Order" or "Ord.") Defendants opposed Plaintiff's Motion. (ECF 287, "Opposition" or "Opp.") Plaintiff filed a reply. (ECF 289, "Reply.") The Court has decided the

Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

**WHEREAS** Plaintiff is a closely held family-owned business engaged in manufacturing and producing inks and paints for permanent marking devices. (ECF 177, "Third Amended Complaint" or "TAC" ¶ 17.) Plaintiff owns U.S. Trademark Registration No. 3,032,336 for the word "Mighty Marker" which it uses on most of its markers and pens, including its "High Purity" markers. (*Id.* ¶¶ 130; Mot. at 10.) SKM does business in the same industry, and for nearly a decade before this suit, Plaintiff sold Mighty Marker® products to SKM for resale. (*See* Opp. at 14 & n.3.) The relationship between the two entities eventually deteriorated, and Plaintiff filed suit alleging, among other things, trademark infringement and misappropriation of trade secrets. (ECF 1; TAC); and

**WHEREAS** Plaintiff filed its initial complaint on November 17, 2022. (ECF 1, "Complaint" or "Compl.") On December 20, 2022, the Court entered the Consent Order which, among other things, bars Defendants from marketing, producing, distributing, advertising, or selling Plaintiff's trade secrets. (Ord. ¶ 5.) On January 25, 2024, Plaintiff filed a Renewed Order to Show Cause seeking to hold Defendants in contempt of the Consent Order and to enjoin Defendants from infringing the "Mighty Marker" and "Bleed-Thru" marks. (*See* ECF 145.) On March 28, 2024, this Court denied Plaintiff's request in its entirety. *See Arro-Mark Co. v. Warren*, No. 22-6663, 2024 WL 1328045 (D.N.J. Mar. 28, 2024) ("*Arro-Mark I*"). Thereafter, on October 4, 2024, Plaintiff filed the Third Amended Complaint. (TAC.) On September 4, 2026, Plaintiff filed the current Motion. (Mot.) Defendants filed their Opposition on September 22, 2026, (Opp.), and Plaintiff filed a reply on September 29, 2026. (Reply); and

**WHEREAS** preliminary injunctive relief "is an extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (internal quotation marks and citations omitted). To obtain a preliminary injunction, "[t]he moving party must demonstrate, first, a likelihood of success on the merits, and second, that 'it is more likely than not to suffer irreparable harm in the absence of preliminary relief.'" *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (footnote omitted)). If both factors are established, a court will consider two remaining factors: "whether granting relief will result in even greater harm to the nonmoving party or other interested persons and whether the public interest favors such relief." *Id.* at 380. "[T]he failure to establish any element renders a preliminary injunction inappropriate." *Ferring Pharms., Inc.*, 765 F.3d at 210 (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (internal punctuation omitted)); and

**WHEREAS** Plaintiff essentially seeks an order enjoining Defendants from infringing on its Mighty Marker® trademark, from "marketing, producing, distributing, selling, or advertising" Plaintiff's products, formulas, trademarks, trade secrets, or patents, and from advertising or marketing Mighty Marker® on the Raptor Supplies Limited ("Raptor Supplies") website, Agriflexcarlow.com, Amazon.com, and Google Images. (Mot. at 2-3.) Plaintiff argues that Defendants marketed Mighty Marker® MM-07 and MM-08 High Purity Markers through third-party websites such as Raptor Supplies, Amazon.com, Agriflexcarlow.com, and Google Images, while identifying SKM as the manufacturer, in violation of the Consent Order. (*Id.* at 3-5, 7-17.) Plaintiff argues that this alleged marketing is "misleading and likely to cause confusion among customers, distributors, and end users" and creates a risk that customers will purchase "expired, non-conforming, uncertified, or otherwise unauthorized products." (*Id.* at 18-19.) In response,

Defendants argue that Plaintiff lacks a reasonable probability of success on its trademark, false association, or counterfeiting claims. (*See* Opp.) Specifically, they argue that they do not own or control the third-party websites, did not authorize the listings, requested that the listings be removed, and cannot be liable for a third-party's conduct. (*See id.* at 7-13.) They also argue that the first sale doctrine protects the resale of genuine Mighty Marker® products and that the Plaintiff has proven that the products are not "genuine products that have been resold." (*Id.* at 13-15.) Lastly, Defendants note that Plaintiff's asserted harms are speculative. (*Id.* at 15-17); and

**WHEREAS** to warrant a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits of its trademark infringement, false association, and counterfeiting claims. *See Mallet & Co.*, 16 F.4th at 380. To establish a claim for federal trademark infringement, a plaintiff must show that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *E.A. Sween Co. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). The elements of a false association trademark claim mirror those of a trademark infringement claim. *See Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017) (explaining that to establish false association, a plaintiff must prove: (1) the trademark is valid and legally protectable; (2) plaintiff owns the trademark; and (3) defendant's use of the trademark to identify goods or services is likely to create confusion concerning the origin of the goods or services). Defendants do not dispute that Plaintiff owns a valid, registered Mighty Marker® mark. (*See* Opp. at 6-7.) The dispute is centered on the third element: whether the challenged, third-party listings reflect Defendants' use of the trademark; and

**WHEREAS** Plaintiff has not demonstrated a likelihood of success on the merits of its trademark infringement claim because the present record does not show that Defendants themselves used the Mighty Marker® mark in the challenged website postings. "Numerous courts have noted that the actual use of a protected mark is a perquisite to a trademark infringement action." *Zany Toys, LLC v. Pearl Enter., LLC*, No. 13-5262, 2014 WL 2168415, at *8 (D.N.J. May 23, 2014) (citing cases); *see also InvenTel Products, LLC v. Li*, 406 F. Supp. 3d 396, 405 (D.N.J. 2019) (concluding that a party could not be directly liable for trademark infringement because the plaintiff did not plausibly allege that it "directly 'used'" its marks). The record indicates that Defendants do not create, own nor control the websites using, and thus did not themselves use, the Mighty Marker® trademark, and Plaintiff offers no evidence to the contrary. Specifically, the record indicates that raptorsupplies.com is owned and operated by Raptor Supplies, a company registered in England; that agriflexcarlow.com is owned by Agriflex, a company in Carlow, Ireland; that the Google images appear to have been scraped from those websites; and that the Amazon listing was placed by EasySmart Products Online, which is not an SKM customer and acted without SKM's authorization. (*See* Opp. at 2-4, 7-12.). Plaintiff itself arguably concedes that Defendants do not control the websites by referring to them as "third-party websites." (*See* Mot. at 25, 31, 49.) Defendants' lack of ownership and control over the websites is further emphasized by the fact that they asked Raptor Supplies to remove the Mighty Marker® images in July 2023, and obtained removal of the Agriflex listing. (*Id.* at 2-4, 8.) On reply, Plaintiff merely argues that ownership of the websites is irrelevant, but provides no authority in support. (Reply at 11); and

**WHEREAS** since the elements of a false association trademark claim mirror those of a trademark infringement claim, Plaintiff has also failed to demonstrate a likelihood of success on the merits of its false association claim. *See Parks LLC*, 863 F.3d at 230; and

**WHEREAS** regardless of whether Plaintiff can prevail on the merits of its claims, it has failed to establish the inapplicability of the first sale doctrine. The first sale doctrine is an affirmative defense to trademark infringement claims. *See Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, 652 F. Supp. 3d 481, 493 (D.N.J. 2023). This doctrine provides that "a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998). If the "product resold by the alleged infringer is 'genuine,'" then "no infringement has occurred." *Steeplechase*, 652 F. Supp 3d. at 494. As this Court has previously noted, the parties have a long history of doing business with each other. *See Arro-Mark I*, 2024 WL 1328045, at *2. Here, Plaintiff acknowledges that it sold Mighty Marker® High Purity Markers to SKM for resale until approximately 2022, (Mot. at 6; Reply at 12), and Defendants submit evidence of such sales from 2013 to 2022. (Opp. at 14, n.3.) Further, Plaintiff also offers no evidence that the contested products are not genuine markers. (*See* Mot; Reply); *Iberia Foods Corp.*, 150 F.3d at 303 ("As a matter of doctrine, a trademark owner attempting to use § 32 to prevent an infringement must establish that the products sold by the alleged infringer are not 'genuine'."); *Food Sciences Corp. v. Nagler*, No. 09-1798, 2010 WL 1186203, at *7 (D.N.J. Mar. 22, 2010) (noting that in *Iberia*, the Third Circuit "revealed that [the first sale doctrine] is not an affirmative defense by placing the burden of persuasion on Plaintiff to prove material difference"). Considering these facts, for

purposes of seeking injunctive relief, Plaintiff has not demonstrated a likelihood of success on the merits of its trademark infringement and false association claims; and

**WHEREAS** Plaintiff likewise has not demonstrated a likelihood of success on its trademark counterfeiting claim. "To establish federal trademark counterfeiting, the record must establish that (1) defendants infringed a trademark in violation of [the Lanham Act], and (2) intentionally used the trademark knowing it was counterfeit or was willfully blind to such use." *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008). "Willful conduct involves 'an aura of indifference to plaintiff's rights or deliberate and unnecessary duplicating of plaintiff's marks … in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured.'" *Kinsley Tech. Co. v. Exquisite Buys*, No. 22-6065, 2023 WL 5218124, at *3 (D.N.J. Aug. 15, 2023). Because Plaintiff has not shown that Defendants infringed on its mark, the claim fails at the first step. (*See supra*); *cf. Kinsley Tech. Co.*, 2023 WL 5218124, at *3 (concluding that a plaintiff prevailed at the first step of a trademark counterfeiting claim after it held that the defendant infringed on the trademark). Further, Plaintiff has not established that Defendants "acted with deliberate disregard of Plaintiff's protected rights"—instead, the record suggests that Defendants did not own, control, or authorize use of the Mighty Marker® mark on the various websites and instead sought to have the mark removed from those sites. (Opp. at 2-12); *Kinsley Tech. Co*, 2023 WL 5218124, at *3; and

**WHEREAS** even if Plaintiff established a likelihood of success on the merits, it has not shown irreparable harm. "To establish irreparable harm, a plaintiff must allege an injury that is 'actual and imminent, not merely speculative.'" *Tristar Products, Inc. v. E. Mishan & Sons, Inc.*, No. 17-1204, 2017 WL 1404315, at *13 (D.N.J. Apr. 19, 2017) (quoting *Macchione v. Coordinator Adm'r in Washington, D.C.*, 591 F. App'x 48, 49 (3d Cir. 2014)); *see also Acierno v.*

*New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994) (noting that injunctive relief requires "a clear showing of immediate irreparable injury, or a presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury" (quoting *Cont'l Grp., Inc. v, Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980))); *A.L.K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 764 (3d Cir. 1971) (holding injury "must be actual and of serious consequence, not merely theoretical"). Plaintiff argues that Defendants' alleged use of its trademark "is misleading and likely to cause confusion among customers, distributors, and end users" and that customers "face a substantial risk of receiving expired, non-conforming, uncertified, or otherwise unauthorized products[.]" (Mot. at 18.) But Plaintiff fails to identify any specific instances of customers experiencing confusion or receiving expired or non-confirming products, instead relying on the type of the speculative "possibility of a remote future injury" that cannot support injunctive relief. *See Acierno*, 40 F.3d at 655. Plaintiff has thus failed to show irreparable harm; and

**WHEREAS** because Plaintiff has not satisfied either gateway factor, the Court need not weigh the balance of harms or the public interest, *see Reilly*, 858 F.3d at 179, and Plaintiff's request for a preliminary injunction is **DENIED**; and

**WHEREAS** Plaintiff also seeks to hold Defendants in civil contempt of the Consent Order. (*See* Mot. at 3, 5-6.) To establish civil contempt, the movant must show by clear and convincing evidence that (1) a valid court order existed; (2) defendants had knowledge of the order; and (3) defendants disobeyed the order. *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995); *Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir. 1990). A defendant should not be found in contempt "if 'there is ground to doubt the wrongfulness of' the defendant's conduct," and "[t]he resolution of ambiguities ought to favor the party charged with contempt." *Harris*, 47 F.3d at 1326

(quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982)). The Consent Order states, as relevant here:

> 5. Defendants Warren, Mamary, SKM and Shanta shall not market, produce, distribute and/or otherwise sell any of Plaintiff's trade secrets;

(Ord. ¶ 5.) Plaintiff asserts Defendants violated paragraph 5 of the Consent Order by "by using/and or profiting from Arro-Mark's trade secrets and/or proprietary business information." (Mot. at 5.) Defendants respond that Plaintiff identifies no trade secret implicated by the website listings and offers no evidence that they used Plaintiff's product specifications or ink formulations. (Opp. at 18-19); and

**WHEREAS** although the Consent Order is valid and Defendants had knowledge of it, Plaintiff has not shown by clear and convincing evidence that Defendants disobeyed it. *See Harris*, 47 F.3d at 1326. Plaintiff does not allege that its trade secrets were marketed nor sold in the challenged website postings, let alone by Defendants themselves. (*See* Mot.) And as discussed, Plaintiff has not sufficiently alleged that Defendants themselves used and infringed its trademark. (*See supra.*) Because there is sufficient reason to doubt the wrongfulness of Defendants' conduct, *see Harris*, 47 F.3d at 1326, the Court declines to find Defendants in contempt or issue sanctions against them at this time. Accordingly, Plaintiff's requests for a contempt order and sanctions are **DENIED**.

For the foregoing reasons, and for good cause shown,

**IT IS, on this 13th day of October 2026**,

**ORDERED** that Plaintiff's Motion (ECF 281) is **DENIED** in its entirety.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Parties
Andre M. Espinosa, U.S.M.J.